Jerry S. Smith (SBA #19599)
JERRY S. SMITH, PLLC
145 S. Sixth Avenue
Tucson, Arizona 85701-2007
Phone:  (520) 326-0134
E-mail: jsmith@jsslawpllc.com
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Denise A. Karakla**,<br><br>              Plaintiff,<br><br>     v.<br><br>**Lutheran Social Services of the Southwest**, an Arizona non-profit corporation,<br><br>              Defendant. | **Case # 4:14-CV-**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Denise A. Karakla, by and through Jerry S. Smith, her undersigned attorney of record, submits this Complaint for relief against the Defendant, Lutheran Social Services of the Southwest, an Arizona non-profit corporation, for her claims for relief for (1) discrimination in employment in violation of the Rehabilitation Act of 1973, 29 U.S.C. 794 and 794a; (2) retaliation for assertion of rights under the Rehabilitation Act, 29 U.S.C. 794(d) and 42 U.S.C. 12203(a); (3) discrimination in employment in violation of the Americans with Disabilities Act, (42 U.S.C. 12112(a & b);

and (4) failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. 207(a).

This Complaint and Demand for Jury Trial is filed pursuant to Federal Rules of Civil Procedure, Rules 3, 7(a)1, 8(a) and 38(a & b), and 42 U.S.C. 1981a(c) and 29 U.S.C. 216(b).

## 1. The Parties, Claims, and Jurisdiction

**1.** The Plaintiff, Denise A. Karakla ("DAK") was at all times material to this Complaint:

    (A)  an adult resident of Pima County, Arizona; and

    (B) a program facilitator for Lutheran Social Services of the Southwest's Alternative to Detention ("ATD"), Community Justice Alternative Services ("CJAS") and Cognitive Skills Development/Cognitive Restructuring ("PFI") programs; and

    (C) a "qualified individual" as defined by 29 U.S.C. 794(d), and 42 U.S.C. 12111(8); and

    (D) an "employee" of Defendant Lutheran Social Services of the Southwest as defined by 29 U.S.C. 794(d),  42 U.S.C. 12111(4), and 29 U.S.C. 203(e); and

    (E) a person with a "disability" as defined by 29 U.S.C. 794(d) and 42 U.S.C. 12102(1), to-wit: Tourette's Syndrome, and an anxiety disorder, which disabilities were known to Lutheran Social Services of the Southwest, specifically DAK's supervisor, Maricela Rincon, who was and is Program Director for Youth Services for Lutheran Social Services of the Southwest.

**2.** The Defendant, Lutheran Social Services of the Southwest ("LSS-SW") is, and has been at all times material to this Complaint:

(A) an Arizona non-profit corporation, with its principal place of business located in Tucson, Pima County, Arizona; and

(B) an "employer" as that term is defined in 29 U.S.C. 203(d), and used in 29 U.S.C. 207(a), and as defined in 29 U.S.C. 794(d) and 42 U.S.C. 12111(5), and 29 U.S.C. 203(d); and

(C) an "enterprise engaged in commerce or in the production of goods for commerce" as that term is defined in 29 U.S.C. 203 (r & s); and

(D) engaged in a "program or activity" as that term is defined and used in 29 U.S.C. 794(b)1 and 29 U.S.C. 794(b)(2)(A), because LSS-SW received and used, and continues to receive and use, federal financial assistance provided by the government of the United States for various social services and other activities carried out by LSS-SW, which employed DAK. On its internet website, LSS-SW provides its 2012 "Annual Report" (published in 2013).  This Annual Report states, inter alia: (1) LSS-SW received "federal grants" totaling $9,985,950 in 2012, which comprised 87.4% of its revenue for the year (Id. at pg. 4), and (2) LSS-SW lists among it's income and gifts sources for 2012 "Federal Emergency Management Agency (FEMA) Emergency Food & Shelter Program".

**3.** DAK seeks relief herein for her claims against LSS-SW for violation of the Rehabilitation Act of 1973, 29 U.S.C. 794, and 29 U.S.C. 794a (Discrimination and Retaliation, Counts One and Two), for violation of the Americans with Disabilities Act, 42 U.S.C. 12112(a & b) (Count Three), and for violation of the Fair Labor Standards Act, 29 U.S.C. 207(a) (Count Four).

**4.** Based upon the foregoing, the United States District Court for the District of Arizona has jurisdiction over DAK's four claims for relief because all claims are based upon and are authorized by federal statutes, pursuant to 28 U.S.C. 1331.  The United States District Court is specifically given jurisdiction for Counts One and Two by 29 U.S.C. 794a(a)(2) and 42 U.S.C. 2000e-5(f)3; for Count Three by 42 U.S.C. 1981a(a)(2), and 42 U.S.C. 2000e-5(f)3; and for Count Four by 29 U.S.C. 216(b).

**5.** Based upon the foregoing, the United States District Court for the District of Arizona is the appropriate venue pursuant to 28 U.S.C. 1691(b).

## 2. Additional Fact Allegations
## in Support of Counts One through Four

**6.** DAK was employed by LSS-SW as a "program facilitator" from November 26, 2012 until her constructive discharge on January 31, 2014.

**7.** From her date of hire through her last day on the job, July 25, 2013, DAK worked on average approximately sixty (60) hours per week.

**8.** DAK was not given supervisory or executive responsibilities and had no input into creating policies or procedures.  Her job was to collect information from troubled youth, either directly or through their parents/guardians, and direct them to the appropriate service providers, applying strict formulas given to her, without exercising discretion or judgment.

**9.** LSS-SW paid DAK an hourly rate of fifteen ($15.00) dollars and an overtime hourly rate of twenty-two and a half ($22.50) dollars during the months of November and December, 2012.

**10.** Beginning on approximately January 1, 2013, LSS-SW began to pay DAK a gross monthly "salary" of approximately twenty-six hundred ($2,600) dollars, although there was no change in DAK's hours or job duties. When DAK asked Ms. Rincon why her pay rate had changed, she was told to be quiet about it or she would lose her job.

**11.** Ms. Rincon was aware of DAK's Tourette's syndrome disability before she was employed by LSS-SW.

**12.** In approximately early January 2013, after she discovered that DAK was receiving medical treatment for her Tourette's disability and that this disability was sometimes evident at work, Ms. Rincon began to exhibit hostility toward DAK, which included the following conduct:

(A) Withholding necessary training from DAK to set her up to fail;

(B) Setting unreasonable time constraints and imposing unreasonable time demands on DAK, such as giving her one hour in between client appointments knowing that the administration of the case would take one and a half hours, forcing DAK to finish work at home;

(C) Purposefully interrupting DAK's work to frustrate and delay DAK;

(D) Badgering and rushing DAK to get her work done more quickly than needed;

(E) Using derogatory terms to describe DAK, such as "twitch" and "tick", and making other demeaning references to her disability and at times encouraging co-workers to taunt DAK about her disability;

(F) Causing DAK's supplies and work product to go missing;

5

    (G)  Raising her voice at DAK in an effort to intimidate DAK;

    (H) Telling DAK she was a part of the management team "in name only";

    (I)  Insisting that DAK get mental health therapy;

    (J) Requiring that DAK work six days per week starting in April, 2013, which increased DAK's required overtime hours;

    (K) Threatening to have DAK terminated if she complained to the LSS-SW human resources department about her treatment or working conditions;

    (L) Discussing DAK's disability with other LSS-SW employees who did not need to know of her condition, causing DAK embarrassment;

    (M) Scolding DAK for taking too long to use the restroom;

    (N) Prohibiting DAK from taking normal lunch breaks; and

    (O) Forcing DAK to sign blank documents under threat of making DAK work her scheduled days off.

**13.** Ms. Rincon also prohibited DAK from completing her own time cards and submitting her actual hours worked.

**14.** On June 7, 2013, DAK made a complaint by phone about Ms. Rincon's hostility and comments about her disabilities to LSS-SW's Human Resources Manager Cecilia Barragan, which was followed up with a meeting with Ms. Barragan on June 10, 2013.  DAK told Ms. Barragan about the conduct of Ms. Rincon and how it related to her disabilities, and the medications she was taking to keep the symptoms of her disabilities in check.

**15.** On June 15, 2013, (A) eight days after DAK had reported Ms. Rincon's conduct to LSS-SW's human resources department (Ms. Barragan), and (B) twelve days after DAK filed her charge of discrimination, paragraph 27 infra, LSS-SW Senior Vice President for Human Resources Dominique Dancause (Ms. Barragan's superior) retaliated against DAK for having complained about disability discrimination by giving her a "Progressive Disciplinary Action" ("PDA") which falsely accused her of violating company policies by leaving a minor unaccompanied and unsupervised without a pre-screening, which was a knowingly false accusation because (1) the minor in question had been pre-screened by the Tucson Police Department, and (2) DAK had sought and obtained approval from a senior staff member for letting the youth take a shower before his intake interview.

**16.** The PDA required DAK to draft a "Corrective Action Plan" ("CAP"), which she did immediately in which she denied the accusations and submitted to Ms. Dancause the next day on June 16, 2013.

**17.** Neither Ms. Rincon nor Ms. Dancause nor anyone else at LSS-SW followed up with DAK on the CAP although such follow up was required by LSS-SW pursuant to its own PDA and CAP policies.

**18.** By July 25, 2013, Ms. Rincon's continuing adverse treatment of DAK had increased DAK's stress and anxiety level to the point of becoming intolerable, and Ms. Rincon knew that such hostility and mistreatment triggered the worst symptoms of DAK's disabilities.

**19.** In all of the actions of LSS-SW and/or Ms. Rincon (acting on behalf of LSS-SW) described herein, paragraphs 6 through 18 supra, the

adverse actions against DAK were motivated by hostility towards her because of her disabilities or her symptoms associated with it, which continued until July 25, 2013, when the intolerable working conditions forced her to take short term disability leave from her job.

**20.** After DAK's short term disability term expired, she was released to work by her treating physician with the restriction was that she not be placed under the supervision of Ms. Rincon, because Ms. Rincon had gotten even more hostile to DAK after DAK had complained about her hostility and both her physician and DAK believed that her disabilities and mental health would be aggravated by returning to work under the supervision of Ms. Rincon who was unrepentant.

**21.** Despite the request of both DAK and her physician, LSS-SW refused to transfer DAK to another supervisor when her short term disability leave expired even though it could have done so as a reasonable accommodation for her disabilities without any undue hardship, and thus DAK was constructively discharged. DAK provided written notice of her constructive discharge to LSS-SW on January 31, 2014.

**22.** LSS-SW's conduct towards DAK described herein constitutes conduct that meets the definition of "discriminate" in 29 U.S.C. 794(d) and 42 U.S.C. 12112(b) and "retaliation" in 29 U.S.C. 794(d) and 42 U.S.C. 12203.

**23.** As the direct and proximate result of such discrimination and retaliation by LSS-SW, DAK has suffered damages including lost income and a reduced standard of living, lost promotional opportunities, harm to her personal and professional reputation, emotional distress (including a

diagnosis of post traumatic stress disorder), loss of sleep, worry about her future employment, aggravation of her two disabilities, and increased medical expenses that would not have been necessary if LSS-SW had not discriminated and retaliated against her.

### 3. Additional Fact Allegations
### in Support of Count Four (Overtime Pay)

**24.** During the period of her employment by LSS-SW, DAK worked on average at least 60 hours per week, but (A) neither LSS-SW nor DAK made or maintained accurate daily wage and hour records showing her number of hours worked each week because DAK was not permitted by Ms. Rincon to keep such records, and (B) DAK received no compensation from LSS-SW for such overtime work.

**25.** The failure of LSS-SW to record and maintain accurate records of the daily hours that DAK worked for it was a deliberate violation of the record keeping requirements of the Fair Labor Standards Act, 29 U.S.C. 211(c) and 29 U.S.C. 215(a)5.

**26.** With respect to such **overtime hours**, DAK should have been paid for the hours over forty per week that she worked at the rate of 1.5 times her hourly rate, and should have been paid by LSS-SW the following sums for the following periods of her employment, but **LSS-SW failed to pay**:

> 20 hours/week x 29 weeks x $14.77 per hour (based upon gross monthly salary of $2,600.00 during 2013) = $8,568.18, times 1.5 [overtime minimum pay rate per 29 U.S.C. 207(a)] = $12,852.27

## 4. Exhaustion of Administrative Remedies (ACRD/EEOC) for Count Three (ADA Claim)

**27.**  On June 3, 2013, DAK filed a timely "Charge of Discrimination" with the Arizona Attorney General's Office, Civil Rights Division ("ACRD"), against LSS-SW, alleging, inter alia, that she suffered disability discrimination in employment in ACRD Charge No. T0012013000356 (the "Charge").  A true copy of the Charge is attached and incorporated herein by reference as **Exhibit 1**, pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 10(c).  The Charge was subsequently cross-filed by the ACRD with the United States Equal Employment Opportunity Commission ("EEOC"), as EEOC Charge No. 35A-2013-00365C, pursuant to the work sharing agreement among those two government agencies.

**28.** On February 25, 2014, the ACRD issued and mailed to DAK its "Notice of Right to Sue" (the "ACRD Notice") based upon her charge, supra. A true copy of the ACRD Notice is attached and incorporated herein by reference as **Exhibit 2**, pursuant to FRCP Rule 10(c).

**29.** On April 15, 2014, the EEOC signed and mailed to DAK its "Dismissal and Notice of Rights" (the "EEOC Notice"), which adopted the findings of the ACRD.  A true copy of the EEOC Notice is attached and incorporated herein by reference as **Exhibit 3**, pursuant to FRCP Rule 10(c).

**30.** This Complaint is filed within ninety days of DAK's receipt of the EEOC Notice, Exhibit 3, infra.

## 5. Demand for Jury Trial

Plaintiff DAK demands a trial by jury pursuant to the Seventh Amendment to the United States Constitution, 29 U.S.C. 794a, 42 U.S.C. 1981a(c), and FRCP Rule 38(a, b).

## 6. Relief Requested

Based upon the foregoing, Plaintiff DAK requests judgment and orders granting her the following relief against Defendant LSS-SW:

### Count One: Rehabilitation Act (29 U.S.C. 29 U.S.C. 794, 794a): Discrimination in Employment Because of Disability

1. Compensatory damages, including, inter alia, lost past and future income damages, emotional distress damages, and other general tort damages.

2. Injunctive relief, as provided for by 29 U.S.C. 794a(a).

3. Reasonable attorneys' fees incurred herein, pursuant to 29 U.S.C. 794a (b), FRCP Rule 54(d)2, and LRCiv Rule 54.2.

4. Expert fees, as provided for by 42 U.S.C. 2000e-5(k).

5. Taxable costs incurred herein, pursuant to FRCP Rule 54(d)1, LRCiv Rule 54.1, and 28 U.S.C. 1920.

### Count Two: Retaliation for Assertion of Rights Under the Rehabilitation Act [29 U.S.C. 794(a & d) and 42 U.S.C. 12203(a)]

1. Compensatory damages, including, inter alia, lost past and future income damages, emotional distress damages, and other general tort damages.

2. Injunctive relief, as provided for by 29 U.S.C. 794a(a).

3. Reasonable attorneys' fees incurred herein, pursuant to 29 U.S.C. 794a (b), FRCP Rule 54(d)2, and LRCiv Rule 54.2.

4. Expert fees, as provided for by 42 U.S.C. 2000e-5(k).

5. Taxable costs incurred herein, pursuant to FRCP Rule 54(d)1, LRCiv Rule 54.1, and 28 U.S.C. 1920.

### Count Three: ADA (42 U.S.C. 12112(a & b): Discrimination in Employment Because of Disability

1. Compensatory damages, as provided for by 42 U.S.C. 1981a(b).

2. Punitive damages, as provided for by 42 U.S.C. 1981a(b).

3. Injunctive relief, as provided for by 42 U.S.C. 12117(a) and 42 U.S.C. 2000e-5(g)1.

4. Expert fees, as provided for by 42 U.S.C. 2000e-5(k) and 42 U.S.C. 1988(c).

5. Reasonable attorneys' fees, as provided for by 42 U.S.C. 12205, 42 U.S.C. 2000e-5(k), 42 U.S.C. 1988(b), Federal Rules of Civil Procedure, Rule 54(d)2, and LRCiv Rule 54.2.

6. Taxable costs, pursuant to Federal Rules of Civil Procedure, Rule 54(d)1, LRCiv Rule 54.1, and 28 U.S.C. 1920.

<u>Count Four: FLSA-Failure to Pay Overtime Wages,
29 U.S.C. 207(a), 29 U.S.C. 215(a)2, and 29 U.S.C. 216(b)</u>

1. Unpaid overtime wages totaling $12,852.27, to be doubled to $25,704.54, pursuant to 29 U.S.C. 216(b).

2. Reasonable attorneys' fees pursuant to 29 U.S.C. 216(b), Federal Rules of Civil Procedure, Rule 54(d)(2), and LRCiv Rule 54.2.

3. Taxable costs pursuant to 29 U.S.C. 216(b), 29 U.S.C. 1920, Federal Rules of Civil Procedure Rule 54(d)(1), and LRCiv Rule 54.1.

Respectfully submitted this 16th day of July, 2014.

<u>s/Jerry S. Smith</u>
Jerry S. Smith, Attorney for Plaintiff
Jerry S. Smith, PLLC

### **7. Attached Exhibits**

1. ACRD Charge (filed June 3, 2013)
2. ACRD Notice of Right to Sue (dated February 25, 2014)
3. EEOC Notice of Right to Sue (dated April 15, 2014)